OPINION
Jacquata Embrey appeals from a decision of the Dayton Municipal Court, which found her guilty of criminal damaging and telephone harassment. The trial court sentenced Embrey to ninety days in jail and a $500 fine on the criminal damaging charge and one hundred and eighty days in jail and a $1000 fine on the telephone harassment charge, suspending all of the jail time and all but $100 of each fine.
The state presented the testimony of Henri Jennings and Kim Matlock. Jennings testified that he, Matlock, and Embrey were all working at the General Motors Truck and Bus Plant in Moraine in the early morning hours of June 10, 2001. Jennings had previously been involved in a relationship with Embrey, which had ended, and he was involved in a relationship with Matlock on June 10, 2001. However, Embrey had driven him to work that night. At approximately 1:00 a.m., while he was on break, Jennings received a call from Embrey asking him where he was. Upon returning to his work station, he observed Embrey already there and saw Matlock in a nearby office. Embrey became angry when Jennings spoke to Matlock, and Embrey threatened to put sugar in his gas tank.
When Matlock left work before Jennings, Jennings asked her to pick up his car, which was at Embrey's house, because he was afraid that Embrey would harm it. Jennings arrived at his home after work that morning at approximately 5:00 a.m. to discover scratches on the sides, trunk, and hood of his car. Later that morning, Jennings received phone calls from Embrey stating that she was going to have someone beat him up.
Matlock also testified to the confrontation while the three were at work, during which Embrey threatened to put sugar in Jennings' gas tank. When she left work, she went to Embrey's house and picked up Jennings' car. She then drove the car to Jennings' home and waited for him. While she was waiting, Matlock received several calls from Embrey asking for Jennings. Then, Embrey came to Jennings' home, where Matlock observed her banging on the door and window. Matlock called the police. After Embrey stopped banging on the house, Matlock looked out the window and observed Embrey trying to open the door to Jennings' vehicle. When she could not open the door, she began scratching Jennings' car. Matlock saw her at the hood and scratching the sides of the car before she stopped watching. When Jennings arrived home, Matlock went to her residence. She then received several phone calls from Embrey, during which Embrey called her a "bitch" and threatened to kill her. Embrey continued to call and hang up until early the next morning.
Embrey also testified at the trial. She testified that her relationship with Jennings had ended that day, rather than prior to that day. She stated that there had been a confrontation between the three at work, but denied that she threatened Jennings. While she admitted being angry with Jennings, she denied damaging his car. She admitted to calling Matlock twice, but denied making any threats. She did not, however, remember what the phone calls were about.
As a result of these incidents, Embrey had been charged with criminal damaging, aggravated menacing, telephone harassment, and menacing. On August 28, 2001, the trial court found her guilty of criminal damaging and telephone harassment, but not guilty of aggravated menacing and menacing. On September 26, 2001, she was sentenced to ninety days in jail and a $500 fine on the criminal damaging charge and one hundred and eighty days in jail and a $1000 fine on the telephone harassment charge. The trial court suspended all of the jail time and all but $100 of each fine provided that Embrey make restitution, obtain anger management counseling, and have no contact with Jennings.
Embrey appeals, raising one assignment of error.
 "BECAUSE THE PROSECUTION'S VERSION OF THE FACTS WAS STRONGLY REBUTTED BY THE DEFENSE'S, AND BECAUSE BY RETURNING "MIXED" VERDICTS THE COURT OBVIOUSLY HAD TROUBLE WITH AT LEAST SOME OF THE STATE'S CASE, THE CONVICTION SHOULD BE REVERSED AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 175.
Embrey concedes that this case essentially involves a credibility determination by the trial court. However, she points to several facts that she believes support her contention that the trial court's decision was against the manifest weight of the evidence. First, she notes that the state did not produce any evidence other than the testimony of Jennings and Matlock. Matlock stated that she called the police when Embrey arrived at Jennings' home, but no representative of the police department was called to testify. Matlock further stated that, when Embrey called her at her home, she recorded one of the calls, but the recording was not produced. We do not know why the state did not present these pieces of evidence, but the trial court was certainly able to recognize these omissions for itself. These pieces of evidence would have served to bolster the credibility of the state's witnesses, but their absence does not negate that credibility.
Embrey next argues that Matlock testified on direct examination that she saw Embrey scratch the hood of the car. However, Jennings testified that the hood was the only part of the car not scratched. On cross examination, Matlock admitted that she had not seen Embrey scratch the hood and had not seen scratches on the hood, but had only seen Embrey at the hood of the car. The trial court also questioned Matlock with regard to what she had seen and cautioned her that she could only testify as to what she saw. Thus, the trial court clearly recognized the inconsistency and still found that Matlock's testimony was credible.
Finally, Embrey argues that her version of events was simply more convincing on a "gut level" and that the encounter at work appeared to have been "set up" by Jennings and Matlock. Embrey's gut feeling is simply not a basis for us to overturn her conviction. Furthermore, the evidence does not support a conclusion that she was set up by Matlock and Jennings. The three worked in the same building and all knew each other. It is not difficult to believe that they might have encountered each other at Jennings' work station.
None of Embrey's arguments change the fact that this case came down to a credibility determination by the trial court. We will not substitute our judgment for that of the trial court on issues of credibility. SeeState v. Lillard (Oct. 24, 1997), Miami App. No. 97CA10. The trial court's conclusion in this case was clearly based on competent and credible evidence. Jennings and Matlock testified to all the elements of the offenses for which Embrey was convicted. Furthermore, the fact that the trial court found her not guilty of the menacing and menacing by stalking charges supports our determination that the court was able to carefully weigh the evidence. Therefore, we conclude that the trial court's decision was not against the manifest weight of the evidence.
The sole assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.